Good morning. I'm Michael McCrory. I'm a half-officer, flyer, and sorter of the Tucson Police Department. This case involves their actions when they were dispatched in May of 2014 to investigate a criminal trespass in an empty apartment. They went into the apartment. They first appeared at the apartment. They had information from a person who works in the landlord that it was supposed to be vacant and empty. They approached it. They found the door was unlocked. It had corroborated that some crime may have committed. They announced that they were there. They called for people to come out. There was no response. They went in. The apartment itself was in the living room. It was very small. They went in there. They cleaned, cleared, did it wrong with any people. They then heard a same radio playing behind a closed door. Now, the case was tried. The Supreme Court's decision was decided under the provocation theory of Alexander and Willington. The Supreme Court's decision in Mendez just recently fabricated that theory. This is what I was supposed to do now. I think you would reach the same conclusion we argued in our brief, which is that there is no personal right of the person who was killed. There is no first and fourth amendment that you should start with. There is consent to the search. We went through that. That's tied to their entry. I think Mendez closed off any attempt by the plaintiff below to extend the illegal entry or the alleged illegal entry to the actual shooter. And I think the plaintiff really essentially concedes that if the court looks at the moment of the shooting, the officers were indeed attacked by someone who marched and who would seriously not take advantage of them. So they had every objective right to use their guns to stop him from hurting them. So if you look at that moment, then that moment is objectively reasonable. You're entitled to summary judgment on that. You see, the facts are now indisputed, largely undisputed, as to what occurred once they opened the door. Yes. So then this only takes away the question of the consequences of the illegal entry, the provocation theory. So we move up the case now to when the officers are at the door. They knock on the door. They go in. That's where the case stands now. And you think those facts are now on the street. Well, I don't think that's the way the case has always been. We argue in our briefs that even under Mendez, under the Ninth Circuit's ruling in Mendez, we heard the provocation. That would not apply to this case because, essentially because the police came out and attacked them. They didn't. They were in the room. But he came and attacked them. None of the provocation cases even went that far. Mendez, I think, would open up something that wasn't necessarily briefed in this case, is whether there was proximate cause. We've raised that his attack on the officers was a superseding or intervening event. There's a clear case law that that's what is, in fact, what the courts will result towards, because the district judge, he can follow the provocation theory. The subsequent acts, whether a result of the illegal entrance, should the case be remanded to the district court to now focus in on the issue of excessive force and qualified immunity? I don't believe it should be remanded, Your Honors, because the law is also very clear that he had no personal force amendment right. And what the district court did, what the trial court did, was to essentially create a landlord-tenant dispute where there was none. And when the records looked at, this case should never have even gotten to the district court. Excessive force would depend upon that. Excessive force puts us at the door. And that's the question. Did the district court have an opportunity to address excessive force and qualified immunity? And the error that the district court had committed in the Fourth Amendment context? It didn't. Obviously, it did not directly address Mendez from the Supreme Court's decision, because that came after the district court opinion. But I think if you look at the way the district court's reasoning went, it's clear the district court was taking the idea of extending one Fourth Amendment issue, the entry, into another Fourth Amendment issue, the suiting. And that Mendez is at the Supreme Court level. And I think the Ninth Circuit simple said you cannot do. So I think the district court had the chance to address excessive force. The order is somewhat unclear, because at one point, the district court says there was excessive force from the entry into the apartment. But later, the court denied the plaintiff's motion for summary judgment on excessive force, saying that it's just a fact, and I'm not sure how you write incidental force. I don't think that matters at this point. Because, again, I think it's so clear that there is no Fourth Amendment right on the part of Dunkley. So he really had no right to protest even the entry. And if you look just at the suiting in terms of that seizure, then I think it's unquestioned that that's objectively reasonable. Perhaps it's not take or be taken. So let me talk about this. It seems to me I'm trying to figure out what the district court determined. The district court said that the plaintiff had no standing to challenge the entering into the apartment, right? No, I think she said she did have standing because of the seizure, and it seems to me she didn't make clear that. I'm trying to see if that's what I'm trying to make sure of. Because it seemed to me that she came out saying you didn't have standing to challenge the entering. But then when we get back to the seizure, she's really saying because he made a bad entry, we're going to voice that on to the seizure. So I'm trying to figure out just exactly what she said from your viewpoint. From my viewpoint, Your Honor, I think what she said was that he was entitled to challenge the entry because of my own attempt to dispute what you're saying. There's no evidence of what she said. I do not believe she ever said he didn't have standing to challenge the entry into the apartment. I believe she said that. It may be argued that way. Even if he didn't have standing, she said, then he would have had standing because of the seizure. Because they entered the apartment once, the house was entrance for using USB Lindsay and USB Howard. That was a seizure. The difference with those cases is they dealt with the actual control of the individuals inside the house. This did not only enter. As we pointed out in our briefs, there was no seizure. It puts them to authority at the time they entered. So there can be no seizure under the Fourth Amendment. And if there are not any other questions, I'll reserve the right for any time. Thank you. Thank you, Your Honors. May it please the Court. This case is one of the reasons somebody asked. Yes, somebody asked that. I'm a representative of the public. This case started at 9 o'clock at night when the unidentified caller called, claiming that another unidentified person, claiming that two other unidentified people were in an apartment complex that they weren't supposed to be in. On that information alone, over two hours later, the defendants arrived at the apartment with no warrant, with no probable cause, with no circumstances. What would they need? A warrant or a probable cause to enter the apartment? They had no information. I'm sorry. They had no information to allow them to enter that apartment. Did they have a call from the real estate agents who were saying that the apartment should have been vacant? Or were they close to it? They had a call from an unidentified person. They had a call from someone self-identifying themselves as C, the agent of the landlord or the owner. That doesn't give them probable cause to enter a residence at night. On that information alone, I wanted to address the unidentified themselves being there. They did. Yes, but that does not allow them to enter a residence without a warrant or without any circumstances. The only problem is, even if your argument is good, what gives your client standing to say anything about it? He has the right. He has a possessory interest over his person. Well, he has a possessory interest over his person, but they didn't even face his person until he came out with a stick. That's a good question. Really, the law states that once police enter a residence, that constitutes a seizure by law. It may be a seizure of that if he had any standing to say anything about it. Well, your argument. The only problem is, I don't know where he gets his standing. Your client didn't have a key, did he? Your argument. Did he have keys? No, he's dead. Did he share the apartment with the prior tenant? We don't know. Did he have his belongings there? We also don't know. Did he pay rent? We don't know that, sir. Did he have common ownership? We don't know that. Well, can you make a judgment? Can you make a judgment? You can just say that. Had the judgment been in favor of eviction, terminating any tenancy rights? There was, but I wanted to get to that. Because on our fronts, the law enforcement is not allowed to rely on eviction or a restraining order or anything unless they looked into it. The question of standing is, what is his relationship and connection to this action? I can't make a judgment. He's a justice, seriously. He was not at the time as owned by the law enforcement, which is the key. You can't say he was not. You can't say he had any right there. You can't say that he did or didn't. Therefore, he has no standing. No, Your Honor, I believe that he has standing over the seizure of a person. Okay, but when he's confronted, that's one thing. But when somebody enters an apartment where he is nothing more than a trespasser, nothing more than just sitting there, he has no key. He has paid no rent. He has no ownership. He has no belonging. There's no evidence. He has anything to do with that apartment except he was there. So I'm trying to begin to understand how he could have any standing. Sir, if someone's playing an alleyway in the street, they don't necessarily have a right to go there. Okay, I understand that. At this point, we'll get to that. Because at the point where the police confront him, I think he would have standing on the seizure of him. But until the police confront him, I don't think he has any standing whatsoever. And I'm waiting for you to tell me why he does. Because under the law, once you enter a residence, you do a seizure. It's not his residence. And with guns drawn. It's not his residence. Yes, but with guns drawn. Okay, with guns drawn, they confront him. Now he has standing. Sir, Your Honor, but- Because at that point, there could be a seizure. I think there was a seizure once they entered the apartment based on- In what is your best case? On Graham. Under the totality of the circumstances, excessive force starts with the need for that force. Once he- You've got to have something to suggest you can say anything about that. You're arguing somebody else's argument. Let's get back to your client's argument. He had nothing in that apartment. He had no control. No rent. No nothing. No key. And now you're arguing because he was there, all of a sudden he has standing over it. I don't find the case. I looked at King. King didn't control. There the tenants were paying rent and claiming their tenant rights. I looked at Fruins. And maybe I say that wrong. Fruins. I don't know how you say it. I don't think they had controls either. There the plaintiff owned the house. It was searched. I couldn't find the case that said he had any standing or served anything about a Fourth Amendment entry of that apartment. I agree with you. He has standing when they confront him. And the fact that they can hold him or they can do something. But at that point, we're at a different problem. Now we're talking about his own seizure. And I'd like to address that. The Fourth Amendment standard on a physical trespass, the question is whether the aggrieved victim was the subject of the seizure. When these officers entered that apartment, the subject of the seizure was whoever they found inside. He was directly the subject. What case is that? Lyle. Lyle. I read Lyle. Lyle. You're talking L-Y-A-L. Jones. Jones. Jones of Lyle's testimony. And they have standing to raise the claim only, and I read this language, if it were his person, his house, his paper, or a fact searched, when they entered that apartment, nothing had been searched. And that is with regard to searches. And I would say that his person was searched and was seized. He wasn't searched. And frankly, he never got a chance to search. Well, the police officer said that they were going in there to seek information. That's a search under the Fourth Amendment. Well, let me ask you this about the facts. In your brief, it says, very little is disputed. And then you've quoted the district court, saying this case presents an unusual circumstance in which the facts are largely undisputed. Do you agree with that? Largely, yes. Okay, well, that's what I'm getting at. Now, you said on page 16, recite the facts as you understand them. 16 and 17. Are those the facts of which we have to decide whether or not the seizure led to the use of excessive force based upon you or versus the facts? Or is there a need for a supreme man to decide what the facts were? Well, you had addressed this earlier, and I wanted to comment on that really quickly. I don't believe the amendment has really changed the analysis much based on what our claim is. Instead of asking whether the final confrontation was a provocation of the illegal entry and excessive entry, the question is, is that a proximate cause of the initial low ground? I'm not complaining in terms of what the facts are. Are you adopting the facts on page 16 and 17 for the court to decide as a matter of law whether there was use of excessive force, or are these facts that you adopted simply for purposes of a summary judgment case? I'm sorry, I don't understand the question. Well, let me try again. If I'm to decide whether or not when the confrontation occurred, am I to look at your version of the facts on page 16 or 17, or are these facts that you're simply proffering as a summary judgment case? That's a question for the jury to report directly. I believe the final confrontation, there are disputable facts about exactly what happened, and I believe the procedure out of the rule, that is a question for the jury. Largely undisputed as opposed to largely undisputed. There may be some disputed facts. The initial entry, the information we know, leading up to what the police officers knew leading up to the entry, and some of the actual confrontations are largely undisputed, which is why, with our consent, that entry was illegal and excessive. Once we get to the bedroom door, and I believe the honors are right, that there is a potential second violation. Once they reach the bedroom door, and they have their guns pointed at him and he has nowhere to go, that there might have been a second excessive force violation. Okay, so then we're getting to where I wanted to go. I didn't mean to interrupt you. No, that was fine. We're getting to where I wanted to go. It seems to be that we're now at the seizure of his own person, right? Correct. When did the seizure take place? On his person. When they opened the bedroom door. Under your analysis, when they opened the bedroom door and they had their guns pointed at him. Well, now, just a minute. Do you suggest that, and I read page 23 of your brief, that a man attacking the police can be seized without a warrant? I'm sorry. Can you read page 23 of your brief? Well, what I read was, a man attacking the police can be seized without a warrant under the Fourth Amendment. He was seized at that point. No, you said a man attacking the police can be seized without a warrant under the Fourth Amendment on page 23. So, my worry is that the seizure took place at the shooting. I don't think that I can even disagree with you about that. I don't think that he was seized before that because I don't think he was seized on this. No standing to argue about him coming into the apartment. Seems to me he could have left. He had no duty to submit to the authority. He had no duty to do anything prior to that confrontation with their guns out and him going to attack. Yes, sir. I believe at that point. I believe. It's my understanding that you believe that if he comes at the police with his stick out and ready to kill them or ready to hit them or ready to do something with them, that they can, at that point, seize him without a warrant. No, I don't believe that's our stance here. Well, I saw what you said on page 23. I'm not looking at page 23 of our brief. That may be. But I think that might be why I'm calling us to take you out. I looked at the whole brief. Well, Your Honor, I believe that he was seized both on the initial entry and expectation of privacy analysis. That's not the only metric by which we looked. We looked at totality of circumstances. We looked at what the officers knew and didn't know. So you're saying that you have the evidence that Mr. Dunkley, the guy that caught him sticking his hand over his ticket. He had a 27-inch stick. Yes. And you have it in a threatening mode for you to approach the officers quickly and growling. We all know for certain he's dead. So all I have is the officer's account. In other words, the undisputed facts are that the man who came at the officers with a stick raised, growling, and the officers reacted by shooting him. Do you know what this stick, what piece? Do you not know? He may have growled. You don't know? Yes, not completely. Not completely. The officer said he grewl. Well, the officer's contrary. Yes. I mean, yes, sure. Thank you very much. Let me go one further. If at that point the officers shoot, what's the best case to suggest that they would have known they shouldn't have done that? Because that's the qualified immunity question. Well, first of all, most excessive force players are under this scenario where we're now in a split-second reaction type of situation we're in. That's a question for the jury. There's a number of cases I've read. We can have a question for the jury based on what you argue, based on what they argue as to the facts of the situation. But if, in fact, I take your facts as best they are, which is that your client came at the police with a hockey stick, even came off the ground, came at them with a hockey stick, and their gun's drawn, what's your best case that they should have known that they could not shoot? I don't have a case to argue. That has to be. You can't say that if you say I haven't got a case. Well, I know the case I read involved knives, guns, swords, and whatnot, but not sticks. Not police knives, not sticks. I think Graham is controlling us. He's trying to invade arrest or attempting to invade the officers by flight. And if I use those factors, you lose. If you analyze the bedroom entry, I will say strong on this, when I entered the apartment, that Graham, after starting, So it's without a doubt, it's without a, you do not adopt to you a theory of the entry into the apartment? You're canceled. And my stance is that's a factual excuse for the jury and the court. I'm not going to correct you. Just a little bit, your Honor. I think first of all, these are the scenes are at the bedroom. And I would say, I'm under the forget these versus Zodar. I.T. And then speak versus Hernandez. And I've seen versus hernandez on page 22 of the brief. There has to be sufficient, even if a cop comes at you with guns, if you escape and don't listen to him, there's no Fourth Amendment seizure. It's not until he was actually shot, there was a seizure. The other thing is that if he was attacking cops, and that's, I think where they have a right to protect themselves, the Supreme Court might forget to send that. I think when you look at page 16 and 17 of the police brief on what happened and how he was killed at the time of the shooting,
judges: Bea, N.R. Smith, Robreno